Allen N. JONES, Appellant,

v.

**MISSOURI SAVINGS
ASSOCIATION, Appellee.**

No. 05–87–01199–CV.

Court of Appeals of Texas,
Dallas.

Aug. 10, 1988.

Timothy M. Fults, Dallas, for appellant.

Stephen A. Khoury, Dallas, for appellee.

Before STEPHENS, HECHT and KINKEADE, JJ.

KINKEADE, Justice.

Allen N. Jones appeals from a summary judgment granted in favor of Missouri Savings Association (MSA) for a $143,618 deficiency on five promissory notes. Jones contends in his sole point of error that the trial court erred in granting MSA's motion for summary judgment because a genuine issue of material fact exists regarding MSA's status as a holder in due course. We disagree.

Jones purchased five condominiums in 1982. Congressional Mortgage Corporation provided the initial financing for the condominiums and then sold the loans in the secondary market to MSA. Eventually, Jones became delinquent and pursuant to the terms of the notes and their accompanying deeds of trust, MSA posted the properties for foreclosure and sold them. MSA then brought suit for the $143,618.87 deficiency, plus fees and expenses. The trial court granted summary judgment in favor of MSA.

Jones claims that MSA cannot be a holder in due course and such status was certainly not established as a matter of law. Jones contends that as a purchaser, MSA is precluded from claiming the status of a holder in due course because it acquired the notes in the secondary market and the summary judgment evidence shows that the loan packages reveal irregularities on their face sufficient to give notice to any purchaser.

Section 3.302 of the Texas Business and Commerce Code sets forth the prerequisites of a holder in due course, and provides that five conditions must be met in order to attain that status. *Williams v. Stansbury*, 649 S.W.2d 293, 295 (Tex.1983). Specifically, the party must be:

1. A holder
2. of a negotiable instrument who took it
3. for value
4. in good faith
5. without notice that it was overdue or had been dishonored or of any defense against or a claim to it on the part of any person.

Every noteholder is presumed to be a holder in due course of the instrument,

absent evidence to the contrary. *See Bryan v. Citizens National Bank,* 628 S.W.2d 761, 763 (Tex.1982); *Jonwilco, Inc. v. C.I.T. Financial Services,* 662 S.W.2d 664, 665–66 (Tex.App.—Houston [14th Dist.] 1983, no writ.). However, after the notemaker shows that a defense to the instrument exists, a person claiming the rights of a holder in due course has the burden of establishing his status as such. *See Favors v. Yaffe,* 605 S.W.2d 342, 345 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.); TEX.BUS. & COM.CODE § 3.307(c) (Vernon 1968).

■ The sole controversy on appeal is whether MSA established as a matter of law that it took the loan packages in "good faith" and "without notice of any defense." "Good faith" is defined in Section 1.201(19) of the Texas Business and Commerce Code as "honesty in fact in the conduct of a transaction concerned." The test for "good faith" is whether the purchaser had actual knowledge of facts and circumstances amounting to bad faith. *Richardson Co. v. First National Bank,* 504 S.W.2d 812, 816 (Tex.Civ.App.—Tyler 1974, writ ref'd n.r.e.).

The only evidence presented by Jones was his affidavit which states:

Specifically, accompanying each original closing file was a FNMA Form 1003, a Residential Loan Application. One such form was completed and submitted with regard to each condominium unit. I personally completed each such Form 1003 by hand. Each Form contains a blank a the bottom right hand portion of the Form requesting information concerning 'other financing' or 'other equity'. *I specifically stated in each Form 1003 that the seller was providing what was described as a 'decorator's allowance' which was to be credited to the down payment otherwise referenced in the loan documents.* It was always one of the underlying bases of the transactions that the decorator's allowance could and would be used to constitute a portion of the down payment. The other closing documents reflected that a cash down payment was made by me at closing. These documents were prepared by the seller, or at the seller's request, and were presented to me for the first time at closing, and I did not find these discrepancies until after the closing had occurred. *Nevertheless, the Affidavits and closing statements were contradicted by the Form 1003, containing the correct information, which I submitted with regard to each of the five purchases.* (Emphasis added.)

Attached to Jones' affidavit is one completed form 1003, loan application. It contains the following language: "Seller to provide decorators allowance of $29,300 at the time of closing of title." Jones argues; 1) that the above summary judgment evidence reveals that form 1003, the underlying document containing the specific information provided by the borrower, was altered prior to closing and 2) the other closing documents contradict the information provided on form 1003 so as to put MSA on notice.

■ The record on appeal does not contain any other closing documents or copies of the other four form 1003's for our review. The record does not show that MSA ever had in its possession the form 1003 referred to by Jones showing the decorator's allowance. Even so, we fail to see how the statement about a decorator's allowance would put MSA or any other holder on notice that it is a part of the down payment. Jones has failed to establish the defense that MSA acted in bad faith or had notice of any defenses precluding MSA's status as a holder in due course. Therefore, the presumption that MSA is a holder in due course is preserved. *See e.g., Favors,* 605 S.W.2d at 345. We overrule Jones' sole point of error and affirm the judgment of the trial court.